## GARLAND *v.* ROLLINS.

By vote of the original proprietors of a township, a committee was appointed "to run out the common lands, showing all the lands that have been *pitched*, and all the common land that is left," and authorizing the committee "to lay out by metes and bounds to each person that has made his *pitch*, one hundred acres to each right, and to make return accordingly." The only return made by the committee was a plan of the township, showing the lots and *pitches*, and the common land left, and the proprietors voted "to accept the report of the committee." One of the original proprietors who had made his *pitch*, had conveyed, previously to the appointment of the committee, one third of his right to J. H. and two thirds to A. W. The plan represented the lot assigned to the right of this proprietor as lying in one body, with "J. H., 33⅓ acres," written on the easterly part of the lot, and "A. W., 66⅔ acres," on the westerly part; but with no line drawn upon the plan to indicate a division of the lot into two parcels. There was in fact a pond of water, covering about twenty acres, extending through the middle of the lot, and the quantity of land between the margin of the pond and the outside lines of the lot, on the east and west respectively, was sufficient to give to the grantees of the original proprietor their several proportions of the one hundred acres, without including any portion of the pond.—*Held*, that parol evidence was inadmissible to show that the committee intended to assign to the right of the proprietor the two separate parcels, one on the east side, containing 33⅓ acres, and the other on the west, containing 66⅔ acres, constituting together the one hundred acres allotted to his right; that the plan was the proper record evidence of the allotment, which could not be contradicted or varied by parol, and that the entire lot within the outside boundaries, as delineated on the plan, including the pond, was assigned to the right.

TRESPASS, for cutting and carrying away standing grass.

Plea, the general issue, and soil and freehold in the *locus in quo* in one Berry, under whom the defendant entered.

The close in question was originally part of the common and undivided lands in the town of Moultonborough. In 1791, Nathan Hoit, one of the original proprietors, made a *pitch* of one hundred acres, at Red Hill Falls, and on the 9th of July, 1806, conveyed one third of his *pitch* to Joseph Hoit, and on the 28th of October, 1806, the other two thirds to Asa Watson. On the 1st of July, 1808, the proprietors of the township appointed a committee "to run out all the common lands in the town, showing all the lands that have been *pitched*, and all the common land that is left," and voted "that said committee lay out by metes and bounds to each person that has made his *pitch*, one hundred acres

to each right, and that each person who shall accept said hundred acres shall relinquish all right and title to all other common lands, for the benefit of the other proprietors." The committee, on the 18th of May, 1809, made return of their doings, by reporting a plan of said town, showing all the lots and *pitches*, and the common land left, and the proprietors voted "to accept the report of the committee."

The plan represented the Nathan Hoit *pitch*, at Red Hill Falls, as lying in one body, there being no line upon it except the outside lines, but on the east side of the *pitch* on the plan was written, "J. Hoit, $33\frac{1}{3}$ acres," and on the west, "A. Watson, $66\frac{2}{3}$ acres." It appeared in evidence that when the committee surveyed and ran out the lot, there were mills and an artificial pond upon it, containing from fifteen to twenty acres, and that Hoit's land was run out on the east and Watson's on the west side of the pond. The mills were owned and occupied at the time by Hoit & Watson, and have been ever since owned and occupied by them, or by their grantees. After the report of the committee was made and accepted by the proprietors, Nathan Hoit released to the other proprietors all his interest in the common and undivided lands in the township. In 1815 the proprietors conveyed all the common lands, and the plaintiff has the title derived from that conveyance. The defendant entered under the title derived from Watson. The alleged trespass was committed upon land covered by the pond. The plaintiff introduced the deposition of Asa Watson, who testified that when the committee ran out the lot they bounded him at high water mark, though he testified that they did not erect any bounds or monuments, or establish any line upon the land; that they surveyed off fifty acres, by running a straight line near the pond, and estimated the quantity of land between that and the margin of the pond to be $16\frac{2}{3}$ acres. It did not appear that the committee did anything else by way of bounding him at high water mark. There was no evidence how Hoit's land on the other side of the pond was run out or bounded, except what appeared from the plan. Each had as much in quantity as his proportion of the one hundred

Garland *v.* Rollins.

acres, without including any portion of the pond.   The plaintiff claimed that the pond passed as common land by the conveyance of the proprietors in 1815.

The court, being of opinion that the proprietors were bound by the plan, and, as that showed no common land between Watson & Hoit, it was to be understood there was none ; that the testimony of Watson, so far as it contradicted the plan, was inadmissible for the proprietors, or any one claiming under them ; and that if admissible, it was not shown that the soil of the pond was common land, until it appeared that Hoit was also bounded at high water mark on the other side of the pond, ruled that the plaintiff had failed to maintain the action, and ordered a nonsuit, which the plaintiff moves to set aside.

*Emerson,* for the plaintiff.

*Lyford,* for the defendant.

SAWYER, J.   By the vote of the proprietors, accepting the report of the committee, the plan constituting their report is made the record evidence of the allotment or assignment to the several original proprietors of their respective shares or estates in the common lands.   It is immaterial in what form the allotment is made, whether by a plan on which may be delineated the boundaries of the several lots, with the names of the proprietors or proprietary rights to which they are assigned, or by a description in words of those boundaries, in connection with the names to which the lots so described may be assigned.   In either case the allotment is by writing, and the plan becomes, in the former case, the record evidence of the assignment ; as does the record description in the latter.   Upon the familiar principle that when such record evidence exists it cannot be controlled by parol, the testimony of Asa Watson, so far as it had any tendency to show that the allotment was not what it appears to have been from the plan, was inadmissible.   The evidence derived from the plan is that a lot was designated by boundaries so located as to include

the *locus in quo* within them. The lot is designated on the plan as belonging to Watson to the extent of 66⅔ acres, on the westerly part, and to Joseph Hoit, to the extent of 33⅓ acres, on the easterly ; together making up the hundred acres which the committee so set off to each proprietary right under which a *pitch*, as it was termed, had been made ; that is, under which the proprietor had selected the general location of his claim, or share, by entry and occupation. That this lot was intended to be assigned to the right of Nathan Hoit would seem not to have been questioned at the trial. The fact that he had conveyed an undivided interest to each of the persons whose names are entered upon the plan in connection with the lot, and in the proportions corresponding with the number of acres specified on the plan ; that is, two thirds of his right to Watson and one third to Hoit, clearly indicates this. We are to suppose also that it was made certain at the trial by the conceded fact that other localities indicated upon the plan, showed the location of this lot to be at the Red Hill Falls, where, as it appeared from the evidence, Nathan Hoit had made his pitch. The case finds that the plan represents the lot, as surveyed for his pitch, as lying in one body ; there being no line upon it to indicate that the portions of it marked as Watson's and Hoit's respectively, were separated by any intervening land which could be regarded as common land, and thus pass by the conveyance from the proprietors in 1815.

The plan is referred to as a part of the case. It is contended by the plaintiff that, from an inspection of it, this statement contained in the case appears not to be correct ; that there do appear upon the plan faint traces of a line or lines, which may indicate that the 66⅔ acres, assigned to Watson, and the 33⅓ acres, to Hoit, were in separate parcels, not lying contiguous to each other, and thus showing a tract between them, not assigned to the right of any proprietor ; and it is claimed that the question should have been submitted to a jury, whether such lines did not originally appear upon the plan limiting the assignment of the one hundred acres, under the "pitch" of Nathan Hoit, to the two separate parcels. The plan is somewhat defaced and muti-

lated, and much of the writing upon it nearly obliterated. There are slight appearances of an irregular line across the lot, such as might indicate the course of a stream or margin of a pond, and also a faint appearance of a straight line, extending a short distance into the lot, apparently the continuation of the dividing line of adjacent lots. This latter, however, runs between the name of J. Hoit, as written on the easterly part of the lot, and the figures 33⅓, indicating his number of acres ; and cannot, therefore, be supposed to have been intended as the boundary of his parcel, but rather as an accidental extension of the dividing line of the adjacent lots beyond the point intended. Whatever appearances of this nature are to be seen upon the plan, it must be understood from the case that the trial proceeded upon the ground that the plan showed what is stated, viz : that the lot was surveyed out in one body, with no lines upon the plan to indicate two separate parcels, and that no question upon that point was raised before the jury. It cannot be understood, that if such question had been made at the trial the court would have declined to submit it to the jury ; and if it was then waived by the plaintiff, the nonsuit should not be set aside for the purpose of enabling him now to raise it.

Upon the evidence shown by the case, the plaintiff failed to make out title to the *locus in quo*, and the

*Nonsuit must stand.*